# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1279

———————

| | |
|---|---|
| Neivi Demaris Guillen-Hernandez; | * |
| Keni Yamileth Guillen-Hernandez; | * |
| Ana Sinia Guillen-Hernandez, | * |
| | * |
| Petitioners, | * |
| | * Petition for Review of |
| v. | * an Order of the Board |
| | * of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

———————

Submitted: October 20, 2009
Filed:  January 25, 2010

———————

Before RILEY, HANSEN, and GRUENDER, Circuit Judges.

———————

RILEY, Circuit Judge.

Sisters Neivi Demaris Guillen-Hernandez, Keni Yamileth Guillen-Hernandez (Keni), and Ana Sinia Guillen-Hernandez (collectively, Petitioners), petition for review of an order of the Board of Immigration Appeals (BIA or Board), affirming an immigration judge's (IJ) denial of asylum, withholding of removal, and relief under the Convention Against Torture (CAT).  We deny the petitions.

## I.    BACKGROUND

On December 2, 1998, in San Ingnacio, El Salvador, Angel Guillen (Guillen), Petitioners' father, was told people were stealing tomatoes from his land.  When Guillen went to investigate, Romel Nunez (Romel), a private individual unaffiliated with the Salvadoran government, shot and killed Guillen and his son Willman Alexander Guillen-Hernandez, Petitioners' brother.  The killings took place at about 6 or 7 p.m., but the police, along with some forensic technicians, did not arrive until the next morning.  Petitioners' mother Bequila Hernandez (Hernandez) testified at Petitioners' hearing, and described how, at the time of the shootings, she ran to the scene of the shootings to see what had happened.  When police questioned Hernandez the next morning, Hernandez reported she was afraid of Romel.  Despite her fear, she cooperated with prosecutors and participated in the criminal prosecution of Romel, including testifying at his trial.  Hernandez said Romel went into hiding and only appeared for one court hearing in his case, to post a bond.  Neither Romel nor his counsel appeared in September 1999 for the final hearing in Romel's murder case at which Romel was convicted.  An arrest order was issued for Romel at the time.  Although the Nunez family lives in the same area as the Hernandez family, no one has seen Romel, and Hernandez does not know what happened to him.  Romel never served any time for the murders.

Hernandez testified Romel and his family harassed Hernandez and her family. During the trial, Romel drove by Hernandez's home, harassed her verbally, and told her to stay out of the case against him.  Romel's brother, Armando Nunez (Armando), also harassed Hernandez and her brother, telling Hernandez on four or five occasions not to get involved in the case against Romel.  Armando also harassed Hernandez's son (Petitioners' brother), Marvin Otonieo (Marvin), when Armando crashed his vehicle into Marvin's car.  Later, one of Romel's daughters verbally harassed one of Hernandez's daughters (who is not a Petitioner here).  Petitioners' brother Ever was assaulted when he was attending the university in San Salvador, but there is no evidence this assault was related to either Romel or Petitioners.  When Hernandez told

the prosecutor about the harassment by Romel and Armando, the prosecutor told her to avoid them. When she approached the police for help, the police told Hernandez they would try to watch Romel more closely. Hernandez acknowledges that after Guillen's death, and later during the trial, the police kept a closer watch on her home and sometimes they would watch Romel. A few months after Romel's trial, at the end of 1999 or during 2000, Hernandez and Marvin left El Salvador for the United States. Hernandez testified that she has no idea why her husband and son were murdered, but she still fears Romel.

Around August or September 2005, over six years after the murders and over four years after Hernandez's departure, three separate notes threatening petitioner Keni (now age 19) were delivered to Petitioners' home in El Salvador. Keni reported the first two notes to the police. Two of Keni's classmates received similar notes, one of whom was later killed. Keni does not know who sent the notes or who would want to hurt her or her friends. When Keni took the first two notes to the police, the police said they would do whatever they could, but Keni did not see any additional protection or think the police were doing anything to help her.

On December 2, 2005, Petitioners arrived in the United States. During the more than four years between Hernandez's departure and Petitioners' later departures from El Salvador, Ever and one of their cousins cared for Petitioners. Although Petitioners never suffered any actual harm while in El Salvador, Hernandez fears for Petitioners' safety should they be returned.

All eight of Hernandez's surviving children are now in the United States. In 2006, the government served upon Petitioners notices to appear for removal and asylum hearings. The Petitioners each conceded removability. The IJ denied Petitioners' claims for asylum, withholding of removal, and relief under the CAT because there was no indication (1) the actions were carried out because of any protected basis under the Act, or (2) the government of El Salvador acquiesced in any

way in Romel's crime. The BIA dismissed Petitioners' appeal because (1) it agreed there was no connection between the Petitioners' fear of violence and an enumerated ground; and (2) to the extent Petitioners are members of a particular social group, they have not established any specific threat upon which a finding of a well-founded fear of persecution connected to an enumerated ground might be based. The Petitioners now appeal the Board's dismissal to this court. We have jurisdiction to review this final order of removal pursuant to 8 U.S.C. § 1252(a).

## II.    DISCUSSION
### A.    Standard of Review

We review de novo the BIA's conclusions of law, but defer to the BIA when it interprets "ambiguous statutory terms if the interpretation is reasonable and consistent with the statute." Cubillos v. Holder, 565 F.3d 1054, 1056 (8th Cir. 2009) (citing De Brenner v. Ashcroft, 388 F.3d 629, 636 (8th Cir. 2004)). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The Attorney General's discretionary judgment whether to grant asylum is "conclusive unless manifestly contrary to the law and an abuse of discretion." Id. at § 1252(b)(4)(D).

### B.    Petitioners' Asylum Claims

"The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established . . . if the Secretary . . . or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." Id. at § 1158(b)(1)(A). A "refugee" is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of" his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. at § 1101(a)(42)(A).

### 1. Well-Founded Fear of Persecution

Petitioners are able to show a well-founded fear of criminal violence, but not persecution. "Persecution" is a harm that is "inflicted either by the government of [a country] or by persons or an organization that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (quoting Valioukevitch v. INS, 251 F.3d 747, 749 (8th Cir. 2001)). "[A]n applicant seeking to establish persecution by a government based on violent conduct of a private actor must show more than 'difficulty . . . controlling' private behavior. Rather, the applicant must show that the government 'condoned it or at least demonstrated a complete helplessness to protect the victims.'" Id. (quoting Galina v. INS, 213 F.3d 955, 958 (7th Cir. 2000)) (internal citation omitted). Without this imprimatur of government officials, asylum claims based on the conduct of non-governmental parties fail. See id. Whether the requisite inability or unwillingness exists is a question of fact. See id.

Petitioners argue they were persecuted when their father and brother were murdered and the killer was not captured and punished. Although tragic, the murders of the Petitioners' family members were not persecution within the meaning of § 1101(a)(42)(A). Petitioners offered no evidence the murders were inflicted by the government, and the extensive police investigation, trial, and conviction of Romel amply support the BIA's finding that the Salvadoran government was willing to control Romel. Nor did Petitioners present evidence El Salvador condoned the murders or demonstrated a complete helplessness to protect the Petitioners. On the contrary, none of the Petitioners experienced any actual harm during the seven years between the murders and their arrival in the United States. While Romel's disappearance could conceivably be evidence of El Salvador's unwillingness or ineffectiveness to control Romel, it is also substantial evidence that Romel fears punishment at the hands of a government ready and willing to enforce its criminal laws. No government imprimatur of the murder of Petitioners' family members appears in the record, and therefore we

cannot say any reasonable adjudicator would be compelled to find these Petitioners were persecuted.

Next, Petitioners presented evidence their mother and brother were threatened by the Nunez family a decade ago, during Romel's trial. There was also evidence Petitioners' brother Ever was assaulted in San Salvador. As discussed above, these private actions, without more, do not amount to persecution. More recently, petitioner Keni received three threatening notes before she left El Salvador, and another girl who received similar notes was later murdered. Petitioners offered no evidence of a connection between the notes and either the government or Romel. Petitioner Keni testified she does not know who sent her the notes or why anyone would want to hurt her or her friends, and the girl who was killed had no connection to Romel or his family. Petitioners may have a well-founded fear of criminal violence should they return to El Salvador, but due to the lack of any government imprimatur, Petitioners do not fear "persecution" within the meaning of § 1101(a)(42)(A). We cannot say a reasonable adjudicator would be compelled to find Petitioners have a well-founded fear of persecution should they return to El Salvador. See, e.g., Menjivar, 416 F.3d at 921-23.

### 2. Causal Nexus to an Enumerated Ground

Assuming, for the sake of argument, Petitioners have a well-founded fear of persecution, there is no evidence Petitioners fear persecution on account of any of the grounds enumerated in § 1101(a)(42)(A). Petitioners do not claim they were persecuted on account of race, religion, nationality, or political opinion. Instead, Petitioners argue they belong to a particular social group as "children of their father and young girls." Under the facts of this case, we suspect Petitioners are not members of a particular social group within the meaning of § 1101(a)(42)(A), but find it unnecessary to decide the issue in order to resolve the case.

If we assume Petitioners' lineage and status as young female children of their father qualifies as a particular social group under the statute, there is still no evidence their membership in this group has any nexus to their fear. The threats against Hernandez and Marvin have not recurred since the time of Romel's trial and there were no threats from Romel or his family toward any of the Petitioners, despite the relatively close proximity of the two families for several years. There is no evidence Ever was assaulted because he was Guillen's son. Nor is there evidence the notes Keni received bore any connection to Romel. Therefore, to the extent the notes represent a threat, such threat is not connected with Petitioners' alleged particular social group.

Petitioners offer insufficient evidence to convince us any reasonable adjudicator would be compelled to conclude either (1) they were persecuted or have a well-founded fear of persecution, or (2) any persecution or well-founded fear of persecution is connected to any ground enumerated in the statute. Petitioners are therefore not refugees within the meaning of § 1101(a)(42)(A) and are ineligible for asylum under § 1158. Because we conclude Petitioners are ineligible for asylum, we do not reach Petitioners' argument that the Attorney General should exercise his discretion to grant Petitioners asylum.

### C. Withholding of Removal and the CAT

To the extent Petitioners seek review of the Board's denial of their claims for withholding of removal and relief under the CAT, we reject their claims. See Gitimu v. Holder, 581 F.3d 769, 774 (8th Cir. 2009) (rejecting failed asylum seekers' withholding of removal claim and request for relief under the CAT when each claim rested on the same factual basis but required a more rigorous standard of proof).

## III. CONCLUSION

The petitions are denied.

_____