# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1107

_____

Kyna La

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 16, 2012
Filed: December 13, 2012

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Kyna La appeals the final order of the Board of Immigration Appeals denying her claims for asylum, withholding of removal, and relief under the Convention Against Torture. Having jurisdiction under 8 U.S.C. § 1252, this court affirms.

La, a Cambodian citizen, entered the United States in 2003 on a six-month visitor visa but overstayed. In 2004, she requested asylum, withholding of removal, and protection under the Convention Against Torture, based on her fear of political persecution in Cambodia.

La testified before the immigration judge that she and her husband, Heng Lim, belonged to the Sam Rainsy Party (SRP), an opposition party. La donated money and made placards and banners; Lim, though not a leader, traveled and recruited. At one point, Lim was beaten and jailed three days for demonstrating. An anonymous caller warned La that she might lose family members if she continued to participate in the SRP. She explained that though it concerned her, such calls were common enough that she felt it was normal and "didn't think that anything major would happen." While La was in the United States in 2003, Lim went missing during an SRP trip. Neither he nor his car were found; La maintains that he was killed for his political activities. In April 2004, the Cambodian government ordered her to appear in court. In June 2004, police issued a warrant for her arrest, posting her picture in her neighborhood. La asserts that she would be arrested if removed to Cambodia. Her children (who are not SRP members) continue to live in her home, operating her business without trouble.

During the removal proceedings, the Department of Homeland Security investigated the documents La submitted supporting her application for asylum. The investigation included showing a Phnom Penh municipal official a copy of Lim's death certificate, and a Notice of Agreement indicating his disappearance.

The immigration judge found La generally credible but denied her claims, finding that she did not establish past persecution, a well-founded fear of future

persecution, or a sufficient likelihood of torture if removed to Cambodia. The BIA dismissed her appeal.

## II.

La argues that the immigration judge and the BIA erred in denying her claims because she demonstrated past persecution, a well-founded fear of future persecution, and a sufficient likelihood of torture. She also contends that the DHS investigation violated her confidentiality, and that the immigration judge considered untrustworthy evidence, violating her due process rights.

## A.

"Where the BIA has adopted the IJ's opinion and added reasoning and analysis of its own, we review both decisions." *Khrystotodorov v. Mukasey*, 551 F.3d 775, 781 (8th Cir. 2008). "We review the determination regarding eligibility for asylum, withholding of removal, and relief under the CAT for substantial evidence, which is an extremely deferential standard of review." *Id.* Reversal under that standard requires evidence "so compelling that no reasonable fact-finder could fail to find for" La. *Nadeem v. Holder*, 599 F.3d 869, 872 (8th Cir. 2010), *citing INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

The Attorney General has discretion to grant asylum to an alien unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." **8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)**. Persecution "is an 'extreme concept' that involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic." *Malonga v. Holder*, 621 F.3d 757, 764 (8th Cir. 2010), *quoting Sholla v. Gonzales*, 492 F.3d

946, 951 (8th Cir. 2007). It "does not encompass low-level intimidation and harassment." *Gutierrez-Olivares v. Mukasey*, 533 F.3d 946, 949 (8th Cir. 2008). A single death threat can establish persecution, but threats that "are exaggerated, non-specific, or lacking in immediacy" may be insufficient. *Corado v. Ashcroft*, 384 F.3d 945, 947-48 (8th Cir. 2004) (per curiam). "Moreover, the persecution must be inflicted by the government or by persons that 'the government is unwilling or unable to control.'" *Cubillos v. Holder*, 565 F.3d 1054, 1057 (8th Cir. 2009), *quoting Flores-Calderon v. Gonzales*, 472 F.3d 1040, 1043 (8th Cir. 2007).

La offers three incidents as evidence of past persecution: the threatening phone call, her husband's beating and jailing, and his disappearance. The record does not compel the conclusion of past persecution.

The threat amounts to low-level intimidation and harassment. La admits that she thought it was normal and "didn't think anything major would happen." She did not report the call to the police and at one point believed it was a hoax. She now contends that it gained gravity after Lim's disappearance. But his disappearance was the following year and no evidence links the call to the disappearance, or to the government. *See id.* (threats did not establish past persecution where Cubillos could not "prove that they were made by the government or persons that the government is unable or unwilling to control").

La cites two Ninth Circuit cases, but they are readily distinguishable. In *Del Carmen Molina v. INS*, 170 F.3d 1247 (9th Cir. 1997), a guerilla group threatened Molina because of her family's political and military affiliation. Not only did she know the source of the threats, but they had an immediacy and credibility absent here because they referenced her cousins, whose families were killed by the guerilla group for their military service. *Molina*, 170 F.3d at 1249. In *Garrovillas v. INS*, 156 F.3d 1010 (9th Cir. 1998), the petitioner was an informant against an insurgent group, not

-4-

a relatively passive party member. The threats he received were known to culminate in murder, and the final one specifically commanded him to cease his activities or a "shoot to kill" order would issue against him. *Garrovillas*, 156 F.3d at 1012. La's threat was unspecific and common enough that she expected nothing "major" to happen. In addition, the Ninth Circuit did not actually find persecution, but remanded for a credibility determination, stating in dicta that if true, Garrovillas' testimony *appeared* to establish past persecution. *Id.* at 1016. The Ninth Circuit has since explained that such threats better show future persecution than past persecution, and that "to the extent that *Garrovillas* might be read to fashion a blanket rule qualifying past threats as past persecution, we decline to embrace that view . . . ." *Lim v. INS*, 224 F.3d 929, 937 (9th Cir. 2000). Threats alone "constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual 'suffering or harm.'" *Id.* at 936, *quoting Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997).

Lim's beating and jailing were not persecution because the beating was minor and he was released after three days. *See Eusebio v. Ashcroft*, 361 F.3d 1088, 1091 (8th Cir. 2004) ("It is a well-established principle that minor beatings and brief detentions, even detentions lasting two or three days, do not amount to political persecution, even if government officials are motivated by political animus.").

Lim's disappearance was not persecution because there is no evidence it was politically related or effected by the government or persons the government was unwilling or unable to control. *See Cubillos*, 565 F.3d at 1057.

Even if the latter two incidents were persecution, they were not tied to La. *See Ahmadshah v. Ashcroft*, 396 F.3d 917, 920 (8th Cir. 2005) ("Acts of violence against family members may demonstrate persecution if they show a pattern of persecution tied to the petitioner."). In *Ahmadshah*, this court found persecution where "[t]he

murder of Ahmadshah's sister points to a pattern of violence perpetrated against Christian converts, and was coupled with a threat directed at Ahmadshah himself." *Id.* La cannot tie Lim's alleged persecution to herself. She was not similarly situated to him because he was an activist and recruiter, a conspicuous and consequential SRP member.

Because La has not established past persecution, establishing a well-founded fear of future persecution requires showing that her fear is both subjectively genuine and objectively reasonable. ***Karim v. Holder***, 596 F.3d 893, 897 (8th Cir. 2010). Credible testimony can establish subjectively genuine fear, but establishing its objective reasonableness requires "credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's native country." *Id.* "[T]he fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility." ***Perinpanathan v. INS***, 310 F.3d 594, 598 (8th Cir. 2002). "A threat of future persecution can be established by demonstrating either an individualized risk or a pattern of persecution of similarly situated persons based on one of the five grounds." ***Thu v. Holder***, 596 F.3d 994, 999 (8th Cir. 2010).

The immigration judge found that La genuinely feared future persecution, but that her fear was not objectively reasonable. La relies on the order to appear in court, her arrest warrant, and the posting of her picture in her neighborhood. These documents issued over five years before her removal proceedings began, and her children have lived in her home and maintained her business without harassment. *See* ***Bernal-Rendon v. Gonzales***, 419 F.3d 877, 881 (8th Cir. 2005) ("An alien's fear of persecution is reduced when her family remains unharmed in her native country."), *citing* ***In re A-E-M***, 21 I. & N. Dec. 1157 (BIA 1998). The record does not compel the finding that these circumstances made La's fear objectively reasonable.

Citing the State Department's 2003 Report on Human Rights Practices in Cambodia, the immigration judge found that while there was some harassment of SRP members during the 2003 elections, there was not a "pattern or practice" of persecution. There were no reports of politically-motivated disappearances and the SRP became the third-largest vote winner. La cites the 2005 and 2006 versions of the report, indicating that Cambodia's human rights record remains "poor" and political problems persist. La, however, offers no compelling evidence that the immigration judge's assessment was incorrect or that the situation has worsened. There is no credible, direct, and specific evidence that, if returned to Cambodia, a reasonable person in La's position – a relatively passive SRP supporter rather than an activist or candidate – would fear persecution due to a general pattern of persecution there.

To obtain withholding of removal, La must establish that there is a clear probability she will suffer persecution if removed (that it is more likely than not that she will be persecuted). *Ngure v. Ashcroft*, 367 F.3d 975, 989 (8th Cir. 2004), *citing INS v. Stevic*, 467 U.S. 407, 429-30 (1984). She cannot; she has not met the lower standard of showing a well-founded fear of future persecution. *See Malonga v. Mukasey*, 546 F.3d 546, 551 (8th Cir. 2008) ("The clear probability standard for withholding of removal is more onerous than the well-founded fear standard for asylum."). Analysis under the Convention Against Torture is unnecessary because there is no evidence La might be tortured for reasons unrelated to her asylum and withholding of removal claims. *See Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005) (requiring separate analysis "only when there is evidence that the alien might be tortured for reasons unrelated to her claims for asylum and withholding of removal").

B.

La argues that her confidentiality was breached when the Notice of Agreement and Lim's death certificate were shown to a Phnom Penh municipal official, raising an inference that she seeks asylum. "Courts 'generally accord Government records

-7-

and official conduct a presumption of legitimacy.'" ***Averianova v. Mukasey***, 509 F.3d 890, 897 (8th Cir. 2007), *quoting **United States Dep't of State v. Ray***, 502 U.S. 164, 179 (1991). "We look to the INS's interpretation of its own regulation, but only 'if the meaning of the words used is in doubt.'" ***Id.***, *quoting **Bowles v. Seminole Rock & Sand Co.***, 325 U.S. 410, 414 (1945).

A DHS immigration regulation states that asylum information may not be disclosed to a third party without the applicant's written consent, except in specific circumstances or at the Attorney General's discretion. **8 C.F.R. § 208.6(a)**. The USCIS has clarified that

> confidentiality is breached when information contained in or pertaining to an asylum application is disclosed to a third party in violation of the regulations, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum.

United States Citizenship and Immigration Services, *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (June 3, 2005), *available at* http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2005/fctsheetconf061505.pdf. But, "the INS does not breach confidentiality if the 'inquiry is routinely conducted for reasons unrelated to an asylum application, such as for an employment application or a visa application.'" ***Averianova***, 509 F.3d at 899, *quoting* Memorandum from INS General Counsel to INS Director of Int'l Affairs, *Confidentiality of Asylum Applications and Overseas Verification of Documents and Application Information* (June 21, 2001), *available at* http://judiciary.house.gov/legacy/82238.PDF. Where a breach occurs, "an applicant may establish a new and independent basis for asylum by showing that the

disclosure gives [rise] to a reasonable inference that the applicant has applied for asylum." *Id.*, citing *Lin v. United States Dep't of Justice*, 459 F.3d 255, 266-68 (2nd Cir. 2006).

In *Averianova*, this court found that providing both petitioners' names and one petitioner's date of birth to Uzbek officials when requesting copies of their birth records did not raise a reasonable inference that they sought asylum. *Id.* Assuming there was a disclosure from La's application, it was less likely to raise an inference of asylum. Lim's death certificate and the Notice of Agreement were shown to an official in the vital statistics section of the Phnom Penh municipality. Though the Notice listed the family's Cambodian address (and her children had told the police years earlier that she was in the United States), neither document mentions La. Even if the official linked her to the documents, such documents are submitted to foreign governments for reasons unrelated to asylum (as the immigration judge noted). La tries to distinguish *Averianova* on the basis that information and documents there were requested from, rather than provided to, government officials. While true, that basis was more apt to raise a reasonable inference of asylum, since their actual identities were given. La compares her case to *Lin*, but the disclosure there strongly implied that Lin sought asylum: a prison Certificate of Release provided to the Chinese government for authentication gave his details and indicated that he had been imprisoned for "conspiracy of anti-revolution." *Lin*, 459 F.3d at 265.

La also argues that the government's Overseas Investigation Report has her name and alien registration number on it, so "[t]here is no specific assurance that this information was not also provided to the Phnom Penh municipality in connection with the investigation." This argument lacks merit. The report states, "The Embassy personnel who performed the investigation are aware of the need to maintain confidentiality." The State Department also assured the DHS, "All investigations are performed by embassy officials . . . with full understanding of the need to maintain confidentiality."

C.

La argues that her due process rights were violated by the immigration judge's consideration of untrustworthy evidence submitted by the government. The Fifth Amendment's Due Process Clause guarantees a fair hearing. *See* ***Kipkemboi v. Holder***, 587 F.3d 885, 890 (8th Cir. 2009). To establish a violation, La "must demonstrate both a fundamental procedural error and resulting prejudice." ***Id.*** "Prejudice requires a showing that the outcome of the proceedings may well have been different had there not been any procedural irregularities." ***Camishi v. Holder***, 616 F.3d 883, 886 (8th Cir. 2010) (internal quotation marks omitted).

La argues that the immigration judge was unfairly influenced by the DHS's Exhibit 10, the Overseas Investigation Report, which denied the authenticity of documents offered by La. To the contrary, the immigration judge determined that consideration of the report would violate La's rights and *granted* her motion to suppress it. La's contention it influenced him is without merit. His opinion does not reference or rely on the exhibit but does reference various of La's documents without questioning their authenticity. There was neither error nor prejudice.

III.

The petition for review is denied.

_____