United States Court of Appeals

For the Eighth Circuit
_____

No. 11-3870
_____

Moussa Fofana

*Petitioner*

v.

Eric H. Holder, Jr.

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: November 14, 2012
Filed: January 29, 2013
_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.
_____

BEAM, Circuit Judge.

Moussa Fofana petitions for review of the Board of Immigration Appeals' (BIA) decision denying him asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Having jurisdiction under 8 U.S.C. § 1252(a), this court denies the petition.

## I.  BACKGROUND

### A.  Testimony

Fofana is a native and citizen of the Republic of Guinea, born in 1970.  He is a member of the Malinke ethnic group.  Fofana testified that while in Guinea, he was the president of a neighborhood youth association and organized unemployed youth to create a non-governmental organization (NGO).  The objectives of the association were to plan events and meetings around culture, sports and arts.  In 1996, Fofana additionally joined the Rally of People in Guinea (RPG).  Fofana testified that the RPG was a political party that had no ethnic affiliation.  He served in a leadership capacity in this organization and solicited participants in the RPG from the already-functioning youth organization.

Fofana testified that he was arrested on April 14, 2002, and again on June 24, 2002, by security officers due to, he believes, his RPG affiliation and his Malinke ethnicity.  He asserted that during each detention, he endured beatings and physical abuse and, in one instance, was stabbed in the arm with a knife.  Fofana sought medical treatment following his release from the April arrest.

When Fofana was released the second time he moved to his home village of Kindia where he later obtained a plane ticket and false documents that allowed him to leave Guinea on December 24, 2002, and enter the United States.  Fofana testified that he traveled to the United States with a smuggler and used a fraudulent passport to gain admission.  Fofana immediately returned the passport and was thus unable to produce corroborating evidence of his actual admission date to the United States, or his manner of entry, during his hearings before the Immigration Judge (IJ).

At Fofana's initial hearing before the IJ, Fofana was unable to authenticate or corroborate his submitted documents.  Given the IJ's "serious concerns" regarding the

documents submitted on Fofana's behalf, the IJ was interested in having the Forensic Document Laboratory (FDL) report on the documents. A delay to accomplish this, noted the IJ, also benefitted Fofana because it gave Fofana an extra opportunity to present his brother's testimony, which Fofana had failed to do at the November 2, 2006, hearing. When the parties reconvened, Fofana submitted an additional country report, and the IJ admitted the FDL report. The FDL report found that none of the enumerated documents could be effectively authenticated, and a handwriting comparison was not possible with the information provided. Fofana did not submit his brother's testimony at the subsequent hearing.

## B.     IJ's Credibility Findings

An IJ denied Fofana's applications based on an adverse credibility finding. In its order, the IJ painstakingly highlighted the inconsistencies and implausibilities in Fofana's applications, testimony, and hearing exhibits. Most prevalent of the inconsistencies were Fofana's alleged arrest dates and detentions. Fofana claimed he was arrested on April 14, 2002, held for two weeks, and that he sought a physician's care immediately upon release. Yet, the physician's "Forensic Report" Fofana submitted in support of his claim is dated May 22, 2002, nearly one month after Fofana's alleged release.

When this particular discrepancy was brought to Fofana's attention, he corrected his prior testimony, explaining with difficulty that he saw one physician the date of his release (who was not actually a licensed medical doctor) and then visited a different doctor. Fofana returned to the second doctor to receive a letter confirming his treatment, which is the "Forensic Report" submitted to the IJ. Additionally, the report does not acknowledge that Fofana was beaten at the hands of security officers, as Fofana alleged before the IJ. The doctor's report notes that Fofana was the victim of "voluntary or involuntary assault and battery," and was seemingly drafted for submission to the police, as it states "Hoping you good reception Mr. the Police

Captain with all the best regards."  Fofana testified that he lied to the doctor about the source of his injuries.  The IJ concluded that Fofana's answers defied logic as to the timing and reasoning behind Fofana's decision to obtain this medical report.

Further, Fofana testified with certainty that the June 24, 2002, arrest occurred as a result of, and immediately following, the national presidential referendum. However, multiple human rights reports and other such governmental reports place the referendum in 2001, not 2002.  When confronted with this discrepancy, Fofana would not confirm the date of the referendum and only reiterated that he was arrested on June 24, 2002.

Finally, in addition to other discrepancies recognized by the IJ, the IJ noted that Fofana's demeanor at the hearing in no way bolstered his credibility: "To the contrary, [Fofana's] demeanor created little confidence in the overall veracity of his claims. Throughout his November 2006 hearing, the respondent often provided evasive answers [that] failed to answer very simple questions.  When questioned by the Department, the respondent often became argumentative."  Additionally, the IJ noted that Fofana's testimony lacked sufficient detail in many key areas.  Following the IJ's denial, Fofana appealed to the BIA, which likewise dismissed his appeal.

## II.   DISCUSSION

"This court reviews the BIA's decision as the final agency action, but to the extent the BIA adopts the findings of the IJ, this court reviews those findings as part of the final agency action."  R.K.N. v. Holder, 701 F.3d 535, 537 (8th Cir. 2012).  An agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.  8 U.S.C. § 1252(b)(4)(B).  This court reviews decisions on asylum, withholding of removal, and CAT protection under the "substantial evidence" standard, upholding the decision if it is "supported by reasonable, substantial, and probative evidence" based on the record as a whole. Falaja v. Gonzales, 418 F.3d 889, 894 (8th Cir. 2005) (internal quotation omitted).

An IJ's credibility determinations are likewise conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. R.K.N., 701 F.3d at 537. Indeed, an agency's credibility findings in particular "are entitled to much weight because the IJ sees the witness testify and is therefore in the best position to determine his or her credibility." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006).

The burden of proof remained on Fofana at all times before the IJ and the BIA to prove his eligibility for asylum, withholding of removal, and CAT protection. 8 C.F.R. §§ 1208.13(a), 1208.16(b) & (c)(2). The Attorney General, in his discretion, may grant asylum to any alien who demonstrates that he is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1)(A); Falaja, 418 F.3d at 894. The term "refugee" is defined as an alien "who is unable or unwilling to return to . . . [his] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Noted above, the IJ made its determination denying relief based upon its credibility finding. And, in doing so, the IJ made thorough, specific findings with regard to Fofana's credibility. On appeal Fofana argues that the basis upon which the IJ questioned his credibility was de minimis in relation to the record as a whole and that as a result, the court denied him due process. In essence, Fofana attempts to transform a fact issue on appeal into a constitutional one.

The Due Process Clause of the Fifth Amendment entitles Fofana to a fair hearing, which includes "the opportunity to be heard at a meaningful time and in a meaningful manner." Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007) (quotation omitted). To establish a due process violation, Fofana "must demonstrate both a fundamental procedural error and prejudice as a result of the error." Camishi v. Holder, 616 F.3d 883, 886 (8th Cir. 2010). He is wholly unable to achieve this task on appeal. Aside from his unconvincing efforts to recharacterize his claims regarding credibility and persuasiveness as constitutional contentions, Fofana attempts to argue that the IJ erred by basing its negative credibility finding on a very small percentage

of the evidence presented. However, Fofana fails this attempt because he does not, and cannot, argue that the IJ did not consider evidence altogether–the only meaningful violation of due process he could argue in this vein. See Hanan v. Mukasey, 519 F.3d 760, 764 (8th Cir. 2008) (noting that "an allegation of wholesale failure to consider evidence implicates due process"). Further, that the noted discrepancies and inconsistencies allegedly constituted only a small percentage of the overall testimony and record evidence is of little consequence in the overall analysis. The issue of consequence is that these discrepancies and inconsistencies relate to the very basis of Fofana's claimed persecution–the entire thrust of Fofana's claims for relief.

The IJ considered all of the evidence presented and its decision is supported by reasonable, substantial, and probative information from the record as a whole. The inconsistencies and discrepancies noted by the IJ in this case were not minor or peripheral. Fofana's lack of both corroboration and consistency are cogent reasons to question Fofana's believability and his disagreement with the IJ's factfinding does not implicate a constitutional infringement. No adjudicator, on this record, would be compelled to conclude otherwise.

Because Fofana failed to satisfy the lower statutory burden of proof required for asylum, it follows that he failed to satisfy the higher, clear probability standard of eligibility required for withholding of removal. 8 C.F.R. § 1208.16(b); Falaja, 418 F.3d at 897. Similarly, as Fofana's CAT protection claim was based on the same discredited testimony, the agency properly found his lack of credibility fatal to that application. Esaka v. Ashcroft, 397 F.3d 1105, 1111 (8th Cir. 2005) (noting standard for relief under the CAT).

## III.   CONCLUSION

We affirm the denial of asylum, withholding of removal, and CAT relief as determined by the IJ and BIA, and deny the petition for review on appeal.

_____