# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2247

_____

Alejandro Gutierrez-Vidal

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 30, 2012
Filed: March 11, 2013

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Alejandro Gutierrez-Vidal petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of his asylum and withholding of removal claims. Having jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## I.   BACKGROUND

Gutierrez-Vidal, a 49-year-old citizen of Peru, entered the United States without inspection on or about January 12, 2003.  Gutierrez-Vidal fears persecution if he returns to Peru, on account of his political opinion.  From 1998 to 2000, Gutierrez-Vidal was the elected president of a group called Señor de los Milagros ("the Group").  The Group consisted of approximately 400 members and helped local authorities provide necessary services–medicine, schooling, housing–to Group members.  According to Gutierrez-Vidal, members of what he described as a terrorist organization, the "Shining Path," had infiltrated the Group.  Gutierrez-Vidal actively opposed the Shining Path at the Group meetings.

In October 1999, Gutierrez-Vidal was meeting with the Group's Finance Secretary, Mario Chavez-Chacon, when three masked individuals attacked them.  Chavez-Chacon was killed during the attack, but Gutierrez-Vidal was able to escape.  Gutierrez-Vidal believed that the assailants intended to kill him because he was the highest ranking official in the Group.  The police investigated this attack and made arrests, but they were never able to convict the perpetrators.  In another instance in October 1999, Gutierrez-Vidal was attacked on his way to work.  He was struck in the head and was treated in the hospital for a fractured skull, a broken arm, broken ribs and cuts on his body.  Gutierrez-Vidal could not identify the attackers because their faces were covered.  Gutierrez-Vidal also reported this incident to the police, who arrested some individuals, but the authorities were again unable to convict anyone.  Further, Gutierrez-Vidal testified that he received threatening phone calls at his home, and the caller urged him to resign from his position in the Group or he would be killed.  Gutierrez-Vidal reported the calls to the police, who conducted an unproductive investigation.  In 2000, Gutierrez-Vidal resigned from his position in the Group.

Gutierrez-Vidal left Peru and moved to Panama for a short period of time. After he left Peru, Gutierrez-Vidal's family moved from Lima into the Peruvian jungle. When Gutierrez-Vidal was living in Panama, his family informed him that the terrorists were still looking for him and knew he was living in Panama. As of the date of Gutierrez-Vidal's appearance before the IJ, one of his children was living in Lima, Peru, one was living in Italy, and the other remained in the Peruvian jungle with his mother.

Gutierrez-Vidal entered the United States on or about January 12, 2003. On December 24, 2003, the government commenced removal proceedings, and Gutierrez-Vidal conceded removability, but applied for asylum, withholding of removal and Convention Against Torture ("CAT") relief. The IJ denied Gutierrez-Vidal's requests for relief. After finding Gutierrez-Vidal's testimony credible, the IJ concluded Gutierrez-Vidal failed to establish persecution. The IJ reasoned that Gutierrez-Vidal's injuries, suffered because of his political opinion, rose to a level beyond harassment or mistreatment, but because Gutierrez-Vidal did not establish that the Peruvian government was unable or unwilling to control the Shining Path, he failed to establish past persecution. The IJ further concluded that Gutierrez-Vidal did not establish a well-founded fear of future persecution, because he did not establish that he could not reasonably relocate to Lima. Thus, according to the IJ, Gutierrez-Vidal did not meet his burden for establishing asylum, and, as a result, he could not meet the higher burden for establishing eligibility for withholding of removal. Finally, the IJ concluded Gutierrez-Vidal did not present evidence to support his CAT claim.

Gutierrez-Vidal appealed to the BIA, which upheld the IJ's conclusion and dismissed the appeal. In doing so, the BIA emphasized the IJ's determination that Gutierrez-Vidal did not establish that the Peruvian government was unable or unwilling to control the persecutors. Additionally, the BIA concluded that Gutierrez-Vidal was unable to identify his assailants, and therefore did not establish a well-founded fear of future persecution by the Shining Path. Accordingly, the BIA denied

the appeal. Gutierrez-Vidal petitions for review of the BIA's decision with respect to his asylum and withholding of removal claims.

## II. DISCUSSION

We review the BIA's decision, as it is the final agency action, but "to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Matul-Hernandez v. Holder, 685 F.3d 707, 710-11 (8th Cir. 2012) (quotation omitted). "An agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Fofana v. Holder, 704 F.3d 554, 557 (8th Cir. 2013). We review asylum and withholding of removal claims for "substantial evidence . . . upholding the decision if it is supported by reasonable, substantial, and probative evidence based on the record as a whole. Id. (internal quotations omitted).

An alien is eligible for asylum if the Attorney General determines that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is "a person who is unable or unwilling to return to his or her country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Ortiz-Puentes v. Holder, 662 F.3d 481, 483 (8th Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)). The asylum applicant bears the burden to establish persecution. 8 C.F.R. § 1208.13(a), (b)(1). Persecution "includes the credible threat of death, torture, or injury to one's person or liberty on account of a protected ground," but does not include "low-level intimidation and harassment." Matul-Hernandez, 685 F.3d at 711 (quotations omitted). If an applicant establishes past persecution, a well-founded fear of future persecution is presumed. 8 C.F.R. § 1208.13(b)(1). Where the applicant fails to establish past persecution, he must demonstrate a well-founded fear of future persecution. Id. In order to prove a well-founded fear of future persecution, the applicant must provide "credible, direct, and specific evidence" to show that "he actually fears persecution and that a

-4-

reasonable person in the alien's position would fear persecution if returned to the alien's native country." Suprun v. Gonzales, 442 F.3d 1078, 1081 (8th Cir. 2006) (quotations and internal quotation omitted).

Additionally, as relevant to past persecution or a well-founded fear of future persecution, the applicant must show that the "assaults were either condoned by the government or were committed by private actors that the government was unwilling or unable to control." Matul-Hernandez, 685 F.3d at 711 (quotation and internal quotation omitted); see also Suprun, 442 F.3d at 1081. To prove persecution based on the violent conduct of a private actor, the applicant "must show more than just a difficulty controlling private behavior." Salman v. Holder, 687 F.3d 991, 995 (8th Cir. 2012) (internal quotation omitted). Rather, the applicant must show that the government condoned the private behavior "or at least demonstrated a complete helplessness to protect the victims." Id. (quotation omitted). "Without this imprimatur of government officials, asylum claims based on the conduct of non-governmental parties fail." Guillen-Hernandez v. Holder, 592 F.3d 883, 887 (8th Cir. 2010). "Whether a government is unable or unwilling to control private actors" is a question of fact that "must be resolved based on the record in each case." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (internal quotation omitted).

Here, Gutierrez-Vidal asserts that the BIA erred by affirming the IJ's determination that he failed to show that the Peruvian authorities were unable or unwilling to protect him from the Shining Path. Gutierrez-Vidal does not allege that the government itself inflicted the harm. Considering Gutierrez-Vidal's testimony and the substantial evidence before it, the BIA correctly concluded that Gutierrez-Vidal failed to demonstrate that the Peruvian authorities were unable or unwilling to control the Shining Path. After the murder of Chavez-Chacon and after Gutierrez-Vidal was attacked, the police investigated both incidents and made arrests. The Peruvian police also entered a protection order for Gutierrez-Vidal. Gutierrez-Vidal contends that the investigations were "minimal and fruitless." However, evidence of

-5-

"ineffectiveness and corruption do not, alone, require a finding that the government is 'unable or unwilling'" to control the alleged persecutor where evidence indicates to the contrary. Khilan v. Holder, 557 F.3d 583, 586 (8th Cir. 2009) (per curiam). Considering the police efforts, the substantial evidence in the record does not indicate that the government condoned the actions of the Shining Path or demonstrated a complete helplessness to protect Gutierrez-Vidal. Thus, Gutierrez-Vidal failed to establish a harm amounting to persecution. Kimumwe v. Gonzales, 431 F.3d 319, 322-23 (8th Cir. 2005) (finding that actions of private parties do not amount to persecution without a showing that the harm inflicted was by persons that the government is unwilling and unable to control).

For this same reason, Gutierrez-Vidal failed to establish a well-founded fear of future persecution. See Suprun, 442 F.3d at 1081 (noting where "the harassment in the past by private individuals does not rise to the level of persecution, so neither would its sporadic continuance in the future"). Gutierrez-Vidal did not produce any "credible, direct, and specific" evidence to indicate the Peruvian government would be unable and unwilling to control the private actors upon Gutierrez-Vidal's return. The BIA concluded that the Shining Path resurgence, after being substantially suppressed by the government, is primarily limited to the coca-growing regions of Peru. The record contains articles depicting instances of attacks carried out by the Shining Path; this evidence, however, is not so strong as to compel a reasonable factfinder to conclude that the Peruvian government is or would be unable or unwilling to control the Shining Path, such that the harm must be attributable to the government. See Menjivar, 416 F.3d at 922. Because Gutierrez-Vidal did not demonstrate any government imprimatur, past or present, he has not established "persecution" within the meaning of 8 U.S.C. § 1101(a)(42)(A), and accordingly his asylum application fails. Guillen-Hernandez, 592 F.3d at 887 (noting that without the

imprimatur of government officials, the asylum claims based on the conduct of private parties fail, specifically finding no well-founded fear of persecution).[1]

Finally, because Gutierrez-Vidal failed to satisfy the lower burden of proof required for asylum, it follows that he failed to satisfy the higher, clear probability standard for withholding of removal. 8 C.F.R. § 1208.16(b); Fofana, 704 F.3d at 558.

## III.  CONCLUSION

For these reasons, we deny Gutierrez-Vidal's petition for review.

_____

---

[1]Gutierrez-Vidal also asserts that the IJ erred by concluding Gutierrez-Vidal did not establish a well-founded fear of future persecution because he did not establish that it would be unreasonable to relocate within Peru. Because the BIA did not expressly adopt the IJ's determination as to Guitierrez-Vidal's ability to relocate, that issue is not properly before us. Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006) ("Because the BIA did not consider the IJ's alternative grounds for denying relief, those issues are not properly before us. Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA."). Regardless of the relocation issue, Guitierrez-Vidal did not demonstrate harm amounting to persecution, as discussed above, and thus his asylum application fails.