# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1924

_____

Francisco Emanuel Lemus-Arita

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 13, 2017
Filed: April 17, 2017

_____

Before COLLOTON, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Francisco Lemus-Arita petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the immigration judge's ("IJ") denial of Lemus-

---

[1]Jefferson B. Sessions, III has been appointed to serve as Attorney General of the United States and is automatically substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Arita's requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[2] For the following reasons, we deny the petition.

## I. Background

Lemus-Arita is a native and citizen of Guatemala. He initially entered the United States illegally in 2002 but returned to Guatemala in December of 2011 in anticipation of relocating there with his wife and son. After staying approximately one month, he decided to return to the United States and entered illegally near Brownsville, Texas on January 23, 2012. The Department of Homeland Security detained him and issued a notice to appear. Lemus-Arita conceded removability and filed an application for asylum, withholding of removal, and relief under the CAT.

In a hearing before an IJ, Lemus-Arita testified that when he returned to Guatemala, he learned that his cousin Oscar had been killed in August 2011.[3] Oscar was rumored to have been involved in a kidnapping, and his murder was purportedly perpetrated by a vigilante group called the Anti-Secuestro (that is, "anti-kidnapping"). Lemus-Arita testified that his uncle began a rumor that Lemus-Arita had returned from the United States with money to avenge his cousin's death. Soon thereafter, family members relayed rumors to Lemus-Arita that the Anti-Secuestro group was looking for him and wanted to kill him. Lemus-Arita immediately abandoned his plans to establish a home in Guatemala and returned to the United States. Lemus-Arita conceded that these threats were never conveyed to him personally, that he never saw anyone from the Anti-Secuestro group, and that he was never harmed.

---

[2]Lemus-Arita does not meaningfully argue on appeal that he meets the standard for relief under the CAT. Therefore, we deem the CAT claim waived. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) (holding that petitioner waives a claim that is not meaningfully argued in the opening brief).

[3]Lemus-Arita's sister testified that Oscar was killed in August 2010.

Lemus-Arita did not report the threats to the police or the Guatemalan government because of rumors that police officers were members of the Anti-Secuestro group. Lemus-Arita's father made a police report, but no investigation resulted.

Lemus-Arita's sister, Evelyn, testified that, after Lemus-Arita left Guatemala, she saw trucks in her village painted with the "mano dura" symbol, which identified a Guatemalan political party and which she associated with the people who purportedly killed Oscar (although she did not identify those individuals as members of the Anti-Secuestro group). Evelyn also testified that armed men in black clothing and ski masks who refused to identify themselves came to her house and told her that they were looking for Lemus-Arita and were going to kill him. She testified that they threatened her with harm if she did not reveal her brother's location, and they later watched the house and followed her for several days. Lemus-Arita also testified that Evelyn called him and told him that someone shot at her house. However, she was never harmed, and she did not report these incidents to the police. Evelyn testified that the family never confirmed why Oscar was killed and that she was unaware of whether Oscar had been accused of kidnapping.

The IJ found Lemus-Arita's testimony credible, but he found Evelyn's testimony only partially credible because her statements were inconsistent and she had an asylum application of her own pending at the time. The IJ then found that Lemus-Arita did not qualify for asylum because he had not established that he had suffered past persecution or that he had a well-founded fear of future persecution. As a result, the IJ found that Lemus-Arita also had not carried his burden of establishing that he qualified for withholding of removal or relief under the CAT. In the alternative, the IJ found that Lemus-Arita had not demonstrated that any persecution would be at the hands of the Guatemalan government or a third party the government is unwilling or unable to control. The BIA affirmed the IJ's decision.

Lemus-Arita petitions for review. The BIA's decision was the final agency decision, *see* 8 U.S.C. § 1101(a)(47)(B)(i), and we have jurisdiction to consider the appeal under 8 U.S.C. § 1252(a)(5).

## II. Discussion

"We review the BIA's decision, as it is the final agency action, but to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Gutierrez-Vidal v. Holder*, 709 F.3d 728, 731-32 (8th Cir. 2013) (quotation omitted). We review legal determinations *de novo*, *Agha v. Holder*, 743 F.3d 609, 614 (8th Cir. 2014), and accept the agency's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary," *Fofana v. Holder*, 704 F.3d 554, 557 (8th Cir. 2013). Further, we review "decisions on asylum, withholding of removal, and CAT protection under the substantial evidence standard, upholding the decision if it is supported by reasonable, substantial, and probative evidence based on the record as a whole." *Id.* (quotation omitted).

Lemus-Arita initially contends that the BIA applied the wrong standard of review to the IJ's finding that Lemus-Arita had not demonstrated an objectively reasonable fear of future persecution and that this issue alone requires remand. The BIA reviews factual findings for clear error and all other matters *de novo*. 8 C.F.R. § 1003.1(d)(3)(i), (ii). "[W]hether an asylum applicant has established an objectively reasonable fear of [future] persecution . . . is a legal determination that remains subject to de novo review." *Matter of Z-Z-O, Respondent*, 26 I. & N. Dec. 586, 590-91 (BIA 2015). Lemus-Arita argues that the BIA reviewed this finding for clear error, but he relies on a strained interpretation of the BIA's decision. The BIA explained that it "review[ed] the Immigration Judge's factual findings for clear error and all other issues de novo." After summarizing the IJ's findings, including those with respect to the objective reasonableness of Lemus-Arita's fear of future

persecution, the BIA concluded "[w]e see no clear error of fact or mistake of law in the Immigration Judge's assessment." Lemus-Arita contends that the BIA's wording leaves "no question" that the BIA reviewed for clear error the IJ's finding that Lemus-Arita's fear of future persecution was objectively unreasonable. We disagree. The phrase "clear error" modifies "fact," not "mistake of law." Lemus-Arita provides no reason to believe that the BIA failed to use *de novo* review to determine whether Lemus-Arita had an objectively reasonable fear of future persecution. Accordingly, we find no reason to conclude that the BIA applied the wrong standard of review.

Next, Lemus-Arita challenges the merits of the BIA's decision. The Attorney General may grant asylum "to any alien who demonstrates that he is a 'refugee' within the meaning of the Immigration and Nationality Act." *Fofana*, 704 F.3d at 557 (quoting 8 U.S.C. § 1158(b)(1)(A)). The Act defines a "refugee" as "an alien 'who is unable or unwilling to return to . . . [his] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (alterations in original) (quoting 8 U.S.C. § 1101(a)(42)(A)). The burden is on the applicant to establish refugee status. 8 U.S.C. § 1158(b)(1)(B)(i).

First, substantial evidence supports the BIA's conclusion that Lemus-Arita failed to demonstrate past persecution. Persecution is "an extreme concept that involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic," and though a single death threat may constitute persecution, a threat that is "exaggerated, nonspecific, or lacking in immediacy may be insufficient." *La v. Holder*, 701 F.3d 566, 570-71 (8th Cir. 2012) (citations omitted). "Past persecution does not normally include unfulfilled threats of physical injury . . . ." *Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006). Rather, "[t]hreats alone constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *La*, 701 F.3d at 571 (quotation omitted).

Lemus-Arita was never harmed and never threatened directly, receiving only secondhand warnings. Indeed, Lemus-Arita could not point to anything more than rumors to substantiate the identity of the group threatening him. Lemus-Arita emphasizes the threats against his sister, but these threats did not result in physical harm to her, and she did not immediately flee Guatemala like her brother. *Cf. Flores v. Holder*, 699 F.3d 998, 1000-01, 1003 (8th Cir. 2012) (calling into question the BIA's determination that an applicant failed to demonstrate past persecution where family members who refused to provide the applicant's whereabouts were killed and his sister was raped). We have found direct and more menacing threats insufficient to demonstrate past persecution. *See Ladyha v. Holder*, 588 F.3d 574, 577 (8th Cir. 2009) (finding a threat at knifepoint insufficient to demonstrate past persecution); *Setiadi*, 437 F.3d at 712-13 (finding a direct death threat insufficient to demonstrate past persecution); *Valiente-Cifuentes v. Holder*, 438 F. App'x 532, 534 (8th Cir. 2011) (unpublished) (finding multiple written death threats insufficient to demonstrate past persecution where applicant was never physically harmed or confronted by the threatening party). Thus, substantial evidence supports the BIA's conclusion that these threats are not of the rare kind "so menacing as to cause significant actual suffering or harm." *La*, 701 F.3d at 571 (quotation omitted).

Second, substantial evidence supports the conclusion that Lemus-Arita failed to demonstrate a well-founded fear of future persecution.[4] "To be 'well-founded,' a fear must be both 'subjectively genuine and objectively reasonable.'" *Zhuang v.*

---

[4]The Attorney General contends that the issue of whether Lemus-Arita established an objectively reasonable fear of future persecution is not properly before us because the BIA never addressed the merits of this claim. The Attorney General is incorrect. The BIA's decision primarily discussed the IJ's findings that any persecution would not come from the Guatemalan government or a third party the government is unable or unwilling to control. However, the BIA also incorporated the IJ's reasoning with respect to the objective reasonableness of Lemus-Arita's fear of future persecution to support its decision. Accordingly, we review both the BIA's and IJ's decisions on this issue. *See Gutierrez-Vidal*, 709 F.3d at 731-32.

*Gonzales*, 471 F.3d 884, 890 (8th Cir. 2006) (quoting *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997)). The IJ found, and the parties do not contest, that Lemus-Arita demonstrated a subjectively genuine fear of persecution. Thus, we need only address whether Lemus-Arita's subjective fear is objectively reasonable. To demonstrate that a subjective fear is objectively reasonable, an applicant must "demonstrate through credible, direct, and specific evidence that a reasonable person in his position would fear persecution." *Feleke*, 118 F.3d at 598. "For an alien's fear of persecution to be objectively reasonable, the fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility." *Perinpanathan v. INS*, 310 F.3d 594, 598 (8th Cir. 2002).

The IJ and BIA concluded that Lemus-Arita failed to demonstrate that his subjective fear is objectively reasonable. The IJ found that Lemus-Arita was never harmed or personally threatened and never observed anyone he thought would attempt to threaten or harm him. The threats his sister related amounted to little more than rumors that did not identify the source of the threats. Moreover, at the time of the IJ's decision, almost three years had elapsed since the threats occurred, and more than five years have elapsed at present. As the IJ reasoned, the fear that the group would seek Lemus-Arita out after so long a time is speculative and objectively unreasonable. To challenge the IJ's reasoning, Lemus-Arita points to his sister's testimony, describing it as "unrebutted, credible testimony." However, the IJ found her testimony only partially credible, and we are "not at liberty to reweigh the evidence." *Eta-Ndu v. Gonzales*, 411 F.3d 977, 982 (8th Cir. 2005) (quoting *Hasalla v. Ashcroft*, 367 F.3d 799, 803 (8th Cir. 2004)). Indeed, "[w]e afford credibility findings from the IJ 'much weight because the IJ sees the witness testify and is therefore in the best position to determine his or her credibility.'" *Chakhov v. Lynch*, 837 F.3d 843, 846 (8th Cir. 2016) (quoting *Fofanah v. Gonzales*, 447 F.3d 1037, 1040 (8th Cir. 2006)). Lemus-Arita has pointed to no evidence that contradicts the IJ's credibility finding, and we accordingly decline to disturb it. As a result, Lemus-Arita has not demonstrated that the record compels the finding that his subjective fear

of persecution is objectively reasonable. Therefore, substantial evidence supports the IJ and BIA's determination that Lemus-Arita failed to establish eligibility for asylum.

Consequently, Lemus-Arita also fails to establish eligibility for withholding of removal. "Eligibility for withholding of removal requires proof of a clear probability that the alien's life would be threatened . . . , which is a more demanding standard than the well-founded fear of persecution standard for asylum." *Osonowo v. Mukasey*, 521 F.3d 922, 926 (8th Cir. 2008). Thus, as Lemus-Arita has not met the standard for asylum, he cannot meet the standard for withholding of removal. *Id.*

## III. Conclusion

For the foregoing reasons, we deny the petition.

_____