# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2711
_____

Melisa Sorayda Chavez-Perez

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States[1]

*Respondent*s

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 15, 2021
Filed: June 9, 2021
[Unpublished]

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

PER CURIAM.

_____

[1]Attorney General Garland is substituted as respondent under Federal Rule of Appellate Procedure 43(c)(2).

Melisa Sorayda Chavez-Perez petitions for review of an order of the Board of Immigration Appeals (BIA), which dismissed her appeal from an immigration judge's (IJ's) decision denying asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition for review.

Chavez-Perez was born and reared in San Marcos, Guatemala. Her father left for the United States when she was an infant, and her mother died when she was twelve. Chavez-Perez lived in San Marcos with her two sisters, two nephews, and one brother-in-law until she fled for the United States in August 2017 at the age of seventeen.

Chavez-Perez testified that her friend Mariana was kidnapped and murdered in 2017. Townspeople suspected that the local leader of the MS-13 gang, a man named Dario, was responsible for Mariana's death. Although Mariana's parents filed a police report, her killer was never apprehended. Chavez-Perez learned that Dario had followed Mariana before her disappearance.

After Chavez-Perez left a store on April 5, 2017, Dario followed her, saying that he was going to kidnap and kill her. He called out to his friends, but Chavez-Perez ran to a neighbor's home and hid until the men left the area. Chavez-Perez testified that Dario followed and threatened her for the next two months because she was a "good looking girl" and a "minor." She explained that Dario threatened girls even if they lived with their families or fathers. No one reported Dario's conduct to the police, despite his harassment of Chavez-Perez and other girls.

Believing that Dario eventually would follow through on his threats, Chavez-Perez left Guatemala for the United States. Since then, neither Dario nor anyone else from the MS-13 gang has tried to locate her, gone to her home in Guatemala, or threatened her family members.

After Chavez-Perez entered the United States, the Department of Homeland Security issued her a notice to appear, charging that she was subject to removal. Chavez-Perez admitted that she was removable, but filed an application for asylum, withholding of removal, and relief under the CAT.

Although the IJ found Chavez-Perez to be credible, he denied her application and ordered her removal. The IJ concluded that Dario's threats and harassment did not rise to the level of harm required to constitute persecution; that Chavez-Perez's alleged social groups were not sufficiently particular or socially distinct; and that even if they were, any fear of persecution was not on account of her membership in those groups. The IJ further concluded that Chavez-Perez could not meet the more rigorous standard of proof for withholding of removal. Nor was she eligible for relief under the CAT because she had not shown that the government had acquiesced in Dario's threats and harassment or that it was more likely than not that she would be tortured if removed to Guatemala. The BIA adopted and affirmed the IJ's order, adding reasoning of its own.

We review the BIA's decision for substantial evidence on the record as a whole. Lemus-Arita v. Sessions, 854 F.3d 476, 480 (8th Cir. 2017). When the BIA adopts the findings or reasoning of the IJ, we consider the two decisions together. Id. "We review legal determinations *de novo*," id., and uphold administrative findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4).

The Attorney General has discretion to grant asylum to an alien who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a). "Persecution is an extreme concept," generally defined as "the infliction or threat of death, torture, or injury to one's person

or freedom, on account of a protected characteristic." Lemus-Arita, 854 F.3d at 481 (quoting La v. Holder, 701 F.3d 566, 570 (8th Cir. 2012)). "Threats alone constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." Id. (quoting La, 701 F.3d at 571) (alteration omitted).

Contrary to Chavez-Perez's argument, the record here does not compel the conclusion that Dario's actions rose to the level of persecution. Chavez-Perez was able to run to safety after Dario followed and threatened her on April 5, 2017. Neither Dario nor his associates physically harmed her during that incident or at any time thereafter. See id. (quoting Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006) ("Past persecution does not normally include unfulfilled threats of physical injury . . . .")). A reasonable adjudicator thus could find that Chavez-Perez failed to establish past persecution.

We next conclude that the BIA did not err in its determination that Chavez-Perez failed to establish membership in a cognizable particular social group. To be particular, a group must "be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." Fuentes v. Barr, 969 F.3d 865, 871 (8th Cir. 2020) (per curiam) (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 239 (B.I.A. 2014)). "Whether a given particular social group is perceived as distinct by the society of which it is part depends on evidence that the society makes meaningful distinctions based on the common immutable characteristics defining the group." Id. (quoting Rivas v. Sessions, 899 F.3d 537, 541 (8th Cir. 2018)).

Chavez-Perez alleged that she belonged to the following groups: Guatemalan women without a male protective figure and young women who do not have a support system or male protective figure. In support of her argument that these groups are particular and perceived as socially distinct, she cited country-report information and statistics regarding violence perpetrated by gang members against women in

Guatemala. This evidence does not establish that women in Guatemala who lack a male protective figure or support system constitute discrete, socially distinctive groups. It instead indicates that women are generally at risk of gang violence. Chavez-Perez argues that "[i]n an environment as hostile and threatening as Guatemala's, common knowledge would lead one to the conclusion that a lone young woman going virtually anywhere would be less safe than one accompanied by a male protective figure." Appellant's Br. 21. This argument lays bare the amorphous, diffuse, and context-dependent nature of the alleged groups—which are defined not by immutable characteristics, but by whether women are out alone. See Fuentes, 969 F.3d at 872 ("vulnerable Salvadoran females" lacked particularity because there existed no "clear benchmark for determining who falls within the group" and because the group was defined based on its members' risk of persecution (quoting Rivas, 899 F.3d at 541)); De Guevara v. Barr, 919 F.3d 538, 541 (8th Cir. 2019) (upholding BIA determinations that "Salvadoran female heads of households" was too broad and amorphous to be particular and that evidence that neighbors knew petitioner lived "without a male companion" did not establish that society viewed the alleged group as distinct). The BIA thus did not err in ruling that Chavez-Perez failed to prove the particularity or social distinction of her alleged groups.

Even assuming Chavez-Perez belonged to a cognizable particular social group, the record does not compel the conclusion that her fear of persecution has a nexus to the group. As the IJ explained, Chavez-Perez fears Dario, a private individual who was personally motivated to cause her harm. Chavez-Perez did not submit evidence that Dario limited his threats and harassment to women who lacked a male protective figure or a support system. Indeed, she testified that Dario threatened girls and young women without regard for family status. Chavez-Perez thus had not established that she was targeted because of her membership in a particular social group, and the record instead supports the BIA's conclusion that she was a target of general crime by a criminal actor. See Salazar-Ortega v. Lynch, 654 F. App'x 854, 858 (8th Cir. 2016) (per curiam) (record did not compel the conclusion that the petitioner was

threatened on account of her membership in the proposed particular social group, *i.e.*, Guatemalan women who lack a male protective figure, rather than on account of her perceived wealth and the threatening individuals' intention to extort money from her); see also Martinez-Galarza v. Holder, 782 F.3d 990, 993 (8th Cir. 2015) (alleged persecutor's reason for wanting to harm petitioner was "motivated by purely personal retribution, and thus not a valid basis for an asylum claim").

For these reasons, we conclude that the BIA permissibly denied Chavez-Perez's claim for asylum. It follows that Chavez-Perez cannot meet the more rigorous standard of proof for withholding of removal. See Lemus-Arita, 854 F.3d at 483 ("Eligibility for withholding of removal requires proof of a clear probability that the alien's life would be threatened . . . , which is a more demanding standard than the well-founded fear of persecution standard for asylum." (quoting Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008)) (alteration in original)). We also find no error in the BIA's denial of relief under the CAT on the basis that Chavez-Perez had not shown that it was more likely than not that she would be tortured by the government or with the government's acquiescence. See Rivas, 899 F.3d at 543 (BIA did not err in concluding that the government did not acquiesce to gang violence) (citing 8 C.F.R. § 1208.18(a)(1), (7)).

The petition for review is denied.

_____