# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2922

_____

| | |
|---|---|
| Jorge Ines Gomez; Sonia Magnolia Gomez; Jorge Osvaldo Gomez, | * * * |
| Petitioners, | * |
| | * Appeal from the Board of |
| v. | * Immigration Appeals. |
| | * |
| Alberto Gonzales, Attorney General of the United States, | * * |
| | * |
| Respondent. | * |

_____

Submitted: September 15, 2005
Filed: October 10, 2005

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioners seek review of the Board of Immigration Appeals' (BIA) denial of their application for asylum, withholding of removal, and relief under the Convention Against Torture. We affirm.

I.

The lead petitioner is Jorge Ines Gomez. His wife and son, Sonia Magnolia Gomez and Jorge Osvaldo Gomez, are his fellow petitioners. All the petitioners are originally from Guatemala. They entered the United States without inspection, conceded removability, and now seek asylum, withholding of removal and relief under the Convention Against Torture.

The petitioners allege that, in 1990, Guatemalan government soldiers severely beat the lead petitioner and Sonia, who was pregnant at the time. They claim that the soldiers were searching for the lead petitioner's brother, a conscripted army deserter. They claim that these soldiers imputed a pro-guerilla/anti-government political opinion to them as a result of their refusal to aid in the soldiers' search for the brother. They also claim that this imputed political opinion motivated the soldiers' actions. The petitioners claim that the beatings injured not only the lead petitioner and Sonia, but also their unborn child. The petitioners allege that the child, William Estuardo Gomez Castro, was born deaf with broken hands and feet and that he died at the age of five.[1]

Since 1990, country conditions appear to have improved in Guatemala, and formal hostilities have ended. The petitioners allege, however, that there remains a general degree of lawlessness. The petitioners allege that this lawlessness involves

---

[1]The petitioners failed to mention William in their initial asylum application and presented no documentation regarding William to the immigration judge. Currently pending is a motion to supplement the record with a Guatemalan birth certificate and death certificate for William, copies of which are attached to the motion. Because we do not reach the issue of the petitioners' credibility, and because we decide this matter based on the lack of proof of the alleged persecutors' impermissible motive, we deny as moot the motion to supplement the record.

crimes of violence, revenge and intimidation carried out by police and former guerrillas and soldiers.

The immigration judge (IJ) assigned to the case made an adverse credibility finding and disbelieved the petitioners' story of persecution. She found in the alternative that even if the allegations of past persecution were true, any such past persecution did not occur because of an imputed political opinion. She also found that because there was no showing of past persecution due to a protected ground, the burden to show a reasonable fear of future persecution rested on the petitioners. Ultimately, she found that the petitioners failed to show a reasonable fear of future persecution in light of current country conditions in Guatemala.

On administrative appeal, the BIA specifically declined to affirm the IJ's adverse credibility determination. The BIA, however, accepted the IJ's alternative finding that, even if the petitioners suffered the past persecution as alleged, there was no evidence of a nexus between the past persecution and one of the five protected bases for a grant of relief: race, religion, nationality, membership in a particular social group, or actual or imputed political opinion. The BIA then found that the petitioners had "not demonstrated that they have a well-founded fear of persecution in Guatemala under the current country conditions in that country."

II.

In this court, the petitioners argue that the past persecution was based on imputed political opinion. The petitioners claim that the record compels reversal of the BIA's contrary finding on this point. The petitioners also argue that the BIA improperly placed on them the burden of showing a fear of future persecution under current country conditions.

-3-

We disagree. To reverse the finding that the alleged persecution was not based on a protected ground, it is necessary that the record *compel* the finding that a protected ground motivated the soldiers' actions. INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992); 8 U.S.C.A. § 1252(b)(4)(B). Here, although the record might support the conclusion that the soldiers beat the petitioners based on imputed political opinion, the record does not compel such a finding.

The petitioners claim that soldiers came to their home specifically to find the lead petitioner's brother and that the soldiers threatened to return if the lead petitioner did not help find the brother. The petitioners are quite clear about the soldiers' immediate goal of finding the brother, a conscripted army deserter. The petitioners do not suggest that the soldiers made any statements regarding the petitioners' political opinions. The petitioners also do not claim that there were events other than the one encounter with the soldiers that would suggest any group had imputed a political opinion to the petitioners. The petitioners do claim that another of the lead petitioner's brothers disappeared. However, they do not explain how the fact of his possible disappearance would support an inference that the soldiers, their persecutors, had acted on an imputed political opinion. In short, the petitioners present only the conclusory allegation that the soldiers' motivation was related to an imputed political opinion.

In a Ninth Circuit case, a petitioner from Guatemala presented allegations that the court accepted as sufficient to establish an inference of an imputed political opinion. Chanchavac v. INS, 207 F.3d 584, 591 (9th Cir. 2000). In Chanchavac, however, there was a more extensive history of abuse and greater evidence to support a finding of imputed political opinion. Id. at 587. In particular, the court accepted as credible a claim that soldiers who beat Chanchavac actually accused him of being a guerilla. Id. at 591. The Ninth Circuit concluded, "No reasonable fact finder could fail to find that the military persecuted Chanchavac on account of this imputed political opinion." Id. In the present case, by contrast, the one instance of violence

can be explained by reasons other than imputed political opinion, namely, the soldiers' undisputed desire to catch a deserter. Also, in Chanchavac, unlike the present case, the BIA had not reached the issue of the soldiers' motives. As a result, the Ninth Circuit did not apply the Supreme Court's deferential standard as set forth in Elias-Zacarias.

We believe that the present case is more similar to Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003), where a Guatemalan citizen claimed past persecution based on imputed political opinion after a rebel group threatened to "disappear" him if he didn't join their army. The court in Dominguez rejected the claim of imputed political opinion, stating, "A reasonable fact finder could decide from this record that the guerillas were simply trying to fill their ranks and were not concerned with [the petitioner's] political beliefs." Id. In the present case, because a reasonable fact finder could infer that the soldiers beat the petitioners for their refusal to cooperate in the search for the brother, the record does not compel a finding of past persecution due to a protected ground.

Because we affirm the BIA's finding that petitioners failed to prove an improper motive, the burden to show a fear of future persecution properly fell on the petitioners. See El-Sheikh v. Ashcroft, 388 F.3d 643, 646 (8th Cir. 2004) ("In a close case, the question of past persecution . . . may well be critical, because it determines whether the INS or the asylum applicant has the burden of proof." (internal quotation marks omitted)). Proof of past persecution due to a protected ground gives rise to a presumption of a reasonable fear of future persecution and places the burden to prove substantially changed country conditions on the Department of Homeland Security. 8 C.F.R. § 208.13(b)(1). When there is no showing of past persecution on a protected ground, however, the burden to prove a well-founded fear of future persecution stays with the petitioners. Accordingly, the BIA did not err when it placed the burden to prove a well-founded fear of future persecution on the petitioners.

In light of this burden, the petitioners' claims fail. The BIA affirmed the IJ's country condition findings without elaboration. The IJ found that conditions in Guatemala were substantially improved, the petitioners had family living safely in Guatemala, and most instances of violence in the country were due to criminal acts not related to ongoing political efforts. The BIA agreed that the petitioners had not shown that they held a well-founded fear of future persecution or that it was more likely than not that they would be tortured upon returning to Guatemala. While the record does appear to contain some ambiguity as to the current conditions in Guatemala, it is undisputed that formal hostilities have ended. Given the deferential nature of our review and the fact that the burden of proof rests with the petitioners, we cannot resolve these ambiguities in a manner adverse to the BIA's decision.

Accordingly, we deny the petition for review.

_____