# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3563

_____

James Thuku Kanagu

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 12, 2014
Filed: February 9, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

James Kanagu, a native and citizen of Kenya, petitions for review of a decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge's (IJ) denial of his petition for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition for review.

## I. Background

Kanagu arrived in the United States on November 18, 2009, without a valid visa or other entry document. On December 8, 2009, the Department of Homeland Security (DHS) initiated removal proceedings against Kanagu by filing a Notice to Appear with the immigration court. DHS charged Kanagu with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because, at the time of his application for admission to the United States, Kanagu did not have a valid entry document. Kanagu conceded removability but applied for asylum under section 208 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1158, withholding of removal pursuant to INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the CAT.

Kanagu testified in an individual merits hearing on October 21, 2011. He claimed he could not return to Kenya because he feared persecution based on his membership in a "particular social group," which he described as a group of vigilantes formed to counter the activities of the Mungiki.[1] Kanagu agreed with the IJ's characterization of his group as "individuals who are openly opposing the Mungiki sect." Kanagu, who had intermittently lived in the United States since 1998, said he had sent small amounts of money to this vigilante group from the United States between approximately 2004 and 2006. The Mungiki accosted Kanagu in Kenya in July 2009, approximately three years after he had last sent money to the vigilantes, demanding money and telling him they knew he could pay because he had money in the United States. They did not mention his membership in any group. The Mungiki let Kanagu go after he gave them approximately $700 in cash he was

---

[1]The U.S. State Department's 2009 Human Rights Report on Kenya, which DHS submitted for consideration in Kanagu's case, described the Mungiki as "the country's largest criminal organization." Administrative R. 317. The Kenyan government has banned membership in the Mungiki, declaring it "a criminal organization because it ran protection rackets, particularly in the public transportation sector, and harassed and intimidated residents." Id. at 328.

carrying and agreed to make monthly payments. Kanagu made only one additional payment and then decided he would not continue paying.

The Mungiki kidnapped Kanagu and his teenage daughter on October 7, 2009, and held them captive for two or three days. In his asylum application, Kanagu stated they were kidnapped because he had stopped making payments. He testified the Mungiki threatened to kill him, saying he had caused them a lot of trouble by sending money to the vigilantes from the United States and could only be saved by paying the money they demanded. The Mungiki forced Kanagu to have sex with several women and raped his daughter in front of him, telling him this was an example of the bad things they would do to his family if he did not pay the money they demanded. The Mungiki released Kanagu and his daughter after he agreed to resume payments. Kanagu did not resume payments and found a note from the Mungiki under the door at his home on October 26, 2009, which stated it was his "last warning" to make the payments and that they knew he had money because he had sold his car. After receiving the note, Kanagu fled to the United States.

In addition to his testimony, Kanagu submitted emails from his daughters and other family members referencing the events of July and October 2009, mentioning the Mungiki knew of his support for the vigilantes, describing the Mungiki's widespread criminal operations, and asking him not to return to Kenya because of their fear he would be harmed by the Mungiki. Both parties also submitted news articles and country reports that detailed how the Mungiki terrorize and extort the general population in Kenya for criminal purposes, leading the majority of Kenyans and the Kenyan government to oppose them.

The IJ denied Kanagu's petition. The IJ found Kanagu credible but found he was ineligible for asylum because he failed to establish persecution on account of a protected ground, namely, membership in a particular social group. The IJ characterized Kanagu's group as "individuals who are openly opposed to the Mungiki

-3-

sect." The IJ found the Mungiki "have directed their harm against anyone and everyone that they may use to further their financial needs and their criminal enterprises" and Kanagu's "proposed social group, then, encompasses a much larger and more diffuse segment of society than any that would be perceived with particularity by society at large." The IJ also found the Mungiki's interest in Kanagu was not related to his membership in any particular social group but rather that his "interaction with the Mungiki concerned extortion attempts on their part and efforts to force [Kanagu] to maintain a monthly system of payments." Thus the IJ found that "the harm suffered by [Kanagu] is not particularized to him but rather a pattern of violent confrontation and extortion by the Mungiki throughout Kenya." The IJ also found that the harm Kanagu suffered did not constitute persecution. The IJ concluded Kanagu had failed to meet his burden of proof for asylum, withholding of removal, or CAT relief and ordered him removed to Kenya.

Kanagu appealed to the BIA. The BIA issued an opinion affirming the IJ's decision and dismissing Kanagu's appeal. It found Kanagu's group of "people who oppose the Mungiki" "does not constitute a cognizable group" under the INA because it does not meet the social visibility requirement, "is not recognized in the community as an identifiable group[,] and is too amorphous to constitute a particular social group within the meaning of the Act." The BIA agreed with the IJ in finding that even if this did constitute a particular social group, the Mungiki seemed to be motivated by extortionate purposes and not by Kanagu's membership in the group, meaning Kanagu failed to show the required nexus between his alleged protected ground and the harm he suffered. Kanagu now petitions this court for review of the BIA's decision.

## II. Discussion

"'A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record.'" Gaitan v. Holder, 671

-4-

F.3d 678, 680 (8th Cir. 2012) (quoting Hassan v. Gonzales, 484 F.3d 513, 516 (8th Cir. 2007)). "Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." Al Yatim v. Mukasey, 531 F.3d 584, 587 (8th Cir. 2008) (internal quotation marks omitted). We review the BIA's decision, as it is the final agency decision; "[t]o the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Id. (internal quotation marks omitted).

The Attorney General has the discretion to grant asylum to any applicant the Attorney General determines is a refugee, defined as "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). The applicant has the burden of proving he or she is a refugee, which requires establishing "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

In his petition for review, Kanagu focuses on the BIA's finding that he is not eligible for asylum.[2] Kanagu argues the BIA erred in (1) not addressing the IJ's failure to consider whether he was a member of a particular social group called "the

---

[2]Kanagu does not appeal the BIA's denial of CAT relief, and while he takes issue with the denial of his petition for withholding of removal, "'[t]he standard for withholding of removal, a clear probability of persecution, is more rigorous than the well-founded fear standard for asylum.'" Davila-Mejia v. Mukasey, 531 F.3d 624, 629 (8th Cir. 2008) (quoting Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005)). Thus as Kanagu is not eligible for asylum, he cannot meet the higher standard for withholding of removal. See id.

Vigilantes;" (2) affirming the IJ's finding that Kanagu's membership in a particular social group was not at least one central reason for the harm he suffered; (3) failing to clearly address the IJ's erroneous finding that Kanagu was not persecuted; and (4) failing to address Kanagu's claim for humanitarian asylum. He also argues we should remand because intervening BIA precedent changed the "particular social group" analysis.

A.

Kanagu argues we must remand his case to the BIA because, though he claimed membership in two particular social groups, "people who oppose the Mungiki" and "the Vigilantes," the IJ and BIA addressed only the first group. On appeal to this court, he describes "the Vigilantes" as "a discrete group that had been formed in his village specifically to oppose the Mungiki through public education campaigns."

In his testimony before the IJ, Kanagu repeatedly agreed his group is accurately characterized as "individuals who are opposing the influence of the Mungiki sect," or "individuals who are openly opposing the Mungiki sect." He also intermittently referred to the group he was "affiliated with" as the "vigilantes group" or "the vigilantes." In his asylum application, Kanagu asserted he was actively involved in educating people about the Mungiki through his membership in two groups, the village council of elders and the local church lay leaders group. He said "[t]he villagers have set up neighborhood vigilante watch groups to counter the Mungiki," and he had provided financial support to those vigilante groups. The IJ asked Kanagu if this involvement is what the Mungiki were referring to when they said he had been supporting the vigilantes, and he agreed that it was. In his BIA appeal, Kanagu argued the IJ erred by grouping him together with all Kenyans who oppose the Mungiki rather than recognizing that his open opposition to the Mungiki made him "part of a discreet (sic) group of Kenyans who took part in funding or supporting the opposition to the Mungiki."

On this record, we find the agency adequately addressed the argument before it. The IJ repeatedly asked Kanagu to confirm his group was "individuals who are openly opposed to the Mungiki sect," and Kanagu agreed. The IJ analyzed that group and noted Kanagu's testimony that he had sent money to the vigilantes, as did the BIA. We do not see any meaningful difference between the group in which Kanagu claimed membership and the group the agency analyzed. Insofar as Kanagu attempts to further narrow his group on appeal, we lack jurisdiction to consider arguments not clearly made before the agency. See Agha v. Holder, 743 F.3d 609, 616-17 (8th Cir. 2014). As Kanagu does not appeal the agency's finding that "individuals who are openly opposed to the Mungiki sect" is not a particular social group, he has failed to establish membership in a particular social group for the purposes of asylum.

B.

Even if Kanagu had proved membership in a particular social group, he still had the burden of proving that membership "was or will be at least one central reason for persecuting" him. 8 U.S.C. § 1158(b)(1)(B)(i). The BIA affirmed the IJ's finding that Kanagu was targeted because the Mungiki perceived he had money to pay their demands and failed to show his group membership was a central reason for the harm he suffered. Kanagu argues the BIA erred in failing to consider the emails from his daughters, which suggested he was targeted because of his support for the vigilantes. He also argues that his testimony alone compelled a finding that he was persecuted on account of his group membership.

The BIA may abuse its discretion by failing to consider all factors presented by the petitioner. Feleke v. I.N.S., 118 F.3d 594, 598 (8th Cir. 1997). But while "the BIA must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted . . . [i]t is not necessary for the BIA to list every possible positive and negative factor in its decision . . . [and] the Board is entitled to a presumption of

-7-

regularity." Averianova v. Holder, 592 F.3d 931, 936 (8th Cir. 2010) (internal quotation marks and citations omitted); see also Doe v. Holder, 651 F.3d 824, 831 (8th Cir. 2011) (while "[a]n allegation of wholesale failure to consider evidence implicates due process . . . [the BIA] is not required by the Constitution to mention every piece of evidence that it considered"); Kamara v. Attorney Gen. of U.S., 420 F.3d 202, 212 (3d Cir. 2005) ("[I]t is the petitioner's burden to show that the BIA did not review the record when it considered the appeal.").

In this case, the BIA affirmed the IJ's finding that Kanagu had not shown he was persecuted on account of his membership in a particular social group. The IJ noted Kanagu's testimonial and documentary evidence, including the group exhibit he offered consisting of his daughter's emails, emails from other family members, and newspaper articles. The IJ referred to Kanagu's testimony and some of the exhibits in explaining its decision. Kanagu does not point to anything in the record or the IJ's decision indicating the IJ failed to adequately consider his documentary evidence. Thus Kanagu has failed to provide sufficient support for his claim that the BIA abused its discretion or violated his due process rights by wholly failing to consider evidence he presented. See Averianova, 592 F.3d at 936-37.

Kanagu also argues the BIA erred in denying his petition because his testimony alone proved he was persecuted on account of his group membership. "To reverse the finding that the alleged persecution was not based on a protected ground, it is necessary that the record *compel* the finding that a protected ground motivated the [perpetrators'] actions." Gomez v. Gonzales, 425 F.3d 543, 545 (8th Cir. 2005). Kanagu testified the Mungiki made some references to his support for the vigilantes, but the evidence primarily showed the extortionate focus of the Mungiki's interactions with Kanagu and their record of widespread and indiscriminate criminality. Upon careful review of the record, we find that a reasonable fact finder could infer that the Mungiki harassed and kidnapped Kanagu for extortionate purposes, and the record does not compel a finding that Kanagu was persecuted on

account of his social group. See Lengkong v. Gonzales, 478 F.3d 859, 862-63 (8th Cir. 2007) (evidence that petitioners were harmed for their religious beliefs did not compel reversal where it was reasonable for the IJ to find the incidents arose from widespread violence in the country and were not particular to the petitioners); Gomez, 425 F.3d at 545-46 (though "the record might support the conclusion that the soldiers beat the petitioners based on imputed political opinion," the record did not compel a finding of past persecution where "a reasonable fact finder could infer that the soldiers beat the petitioners for their refusal to cooperate in the search for the [lead petitioner's] brother"). Thus we will not reverse the BIA's finding that Kanagu failed to prove persecution on account of a protected ground.

C.

Kanagu's remaining arguments require only a brief discussion. First, he argues the IJ erroneously found he did not suffer persecution and the BIA's opinion did not make clear if it was affirming this finding or improperly conducting its own fact-finding to decide he had, in fact, been persecuted. We need not decide this issue because Kanagu failed to prove he was harmed on account of a protected ground.

Second, Kanagu argues we should remand because the BIA failed to address whether he was eligible for humanitarian asylum. Remand is not warranted in Kanagu's case because "humanitarian asylum may only be granted to 'an alien found to be a refugee on the basis of past persecution,'" meaning Kanagu's failure to prove persecution on a protected ground makes him ineligible for humanitarian asylum. Mambwe v. Holder, 572 F.3d 540, 549 (8th Cir. 2009); see also Esenwah v. Ashcroft, 378 F.3d 763, 766-67 (8th Cir. 2004) ("[W]ithout the requisite nexus, it is of no moment whether the BIA abused its discretion by . . . failing to recognize [petitioner's] past persecution as entitling him to a grant of humanitarian asylum.").

Finally, Kanagu argues we should remand because intervening precedent from the BIA changed the "particular social group" analysis, which changes the law that applies to this case. See Matter of M-E-V-G-, 26 I. & N. Dec. 227 (BIA 2014); Matter of W-G-R-, 26 I. & N. Dec. 208 (BIA 2014) (companion cases replacing the "social visibility" requirement with a "social distinction" requirement to clarify that literal or on-sight visibility is not required). Kanagu provides no authority in support of his argument that a change in the BIA's explanation of "particular social group" would alter the agency's decision or otherwise compel remand by our court. Thus we decline to remand.

## III.  Conclusion

For the foregoing reasons, we deny Kanagu's petition for review.

_____