# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2947

_____

Evelin Salazar-Ortega; Sugeyli Mishelle Alvarez-Salazar

*Petitioner*s

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 17, 2016
Filed: July 8, 2016
[Unpublished]

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

PER CURIAM.

Evelin Salazar-Ortega and her minor daughter, both natives and citizens of Guatemala, entered the United States illegally in July 2014 and were placed in removal proceedings. They sought relief from removal by filing applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Following a hearing, the immigration judge (IJ) denied relief, and the

Board of Immigration Appeals (Board) affirmed. Salazar-Ortega now petitions this court for review. We deny the petition.

In her application for relief, Salazar-Ortega stated that she feared being persecuted in Guatemala on account of her membership in the particular social group of "Guatemalan women who lack a male protective figure," her membership in her "family," and her "political opinion supporting women's rights." Salazar-Ortega testified before the IJ that she was married but was separated from her husband; that in 1995, when she was four years old, her father was murdered in Guatemala after receiving demands for money and death threats; that she graduated from the Universidad de San Carlos de Guatemala in July 2014; and that she worked as a teacher and as an independent sales representative for several fashion and beauty companies. In February 2014, Salazar-Ortega began receiving phone calls and text messages from two men who demanded 50,000 quetezales (about $6,500), and threatened to harm her and her daughter if she did not pay. She testified that the men knew who her father was; where she was a student; and when she went to work, attended classes, and came home. She further testified that she believed the men knew she was working as a sales representative and that they had asked her for money because "they thought that I did have money because I also sold products." Salazar-Ortega reported the threats to the police several times, but the police did not identify or apprehend the men.

Salazar-Ortega also testified that on July 10, 2014, two masked men grabbed her as she was leaving the university, held down her arms, tore her blouse and touched her breast, put a gun to her back, and attempted to rape her. They fled when security officers happened upon the area. Officers gave chase, but the men escaped. Salazar-Ortega testified that the two men who attacked her were the same two men who had been threatening her over the phone because "they told [her]" they were the "same people" and "mentioned the money," again demanding 50,000 quetezales. She stated that the men "said the same things that they said . . . when they would call" and

that warned her that they had not been "jok[ing]" about paying them the money. She also testified that the men told her that she had one month to pay or they would kill her and her daughter. Salazar-Ortega reported the incident to the police the next day but, as far as she knew, the police neither investigated the incident nor apprehended the two men. Ten days later, she left Guatemala, explaining that she felt compelled to leave because the two men "were going to . . . murder me and [my] daughter, and they gave me a month . . . to get that money. I wasn't going to be able to get that money." When asked at the hearing why she believed these men had targeted her, Salazar-Ortega stated, "[A]t one time, you know, they did mention that a woman has to be dependent of a man [and not] just move forward and . . . be independent and move ahead by herself."

The IJ denied relief, concluding first that Salazar-Ortega had presented insufficient evidence to support her claims that she had suffered persecution on account of her political opinion or her membership in her family. The IJ also declined to determine whether "Guatemalan women who lack a male protective figure" constituted a particular social group because, in any event, Salazar-Ortega had failed to establish that the harm she suffered was in any way related to her membership in that particular social group. Instead, the IJ found it "clear from [her] testimony as a whole that she was subject to extortion by criminals and threats, and, finally, an attack for the simple reason that they wanted money."

Salazar-Ortega filed a motion to reconsider, proposing a different particular social group and arguing that the IJ "plainly erred in finding no nexus between the past persecution [she] suffered and her political opinion supporting women's rights or her membership in the particular social group of single Guatemalan women who are working professionals." She argued that the IJ erroneously focused on a motive of criminal extortion and failed to consider that a protected ground was at least "one central reason" for the harm she suffered. The IJ denied the motion.

On appeal to the Board,[1] Salazar-Ortega argued that the IJ erred by rejecting her claims that she was persecuted on account of her political opinion supporting women's rights, her membership in her "family," and her membership in the newly proposed particular social group of "single Guatemalan women who are working professionals." The Board dismissed Salazar-Ortega's appeal, concluding that her testimony established that the two men had threatened and attempted to rape her because of their criminal motivation to extort money. The Board noted that "persons perceived as being wealthy do not constitute a particular social group," nor do "conditions of civil strife affecting the populace as a whole . . . constitute persecution." The Board acknowledged Salazar-Ortega's testimony suggesting that she was targeted because a woman cannot be "independent and move ahead by herself," but concluded that her testimony as a whole clearly established that she was targeted "because of her perceived wealth" and her ability to comply with extortionate demands, not because of her membership in the particular social group of "single Guatemalan women who are working professionals." The Board further concluded that Salazar-Ortega had not presented sufficient evidence to show that the men targeted her because she supported women's rights or because of her membership in her family. The Board determined that because Salazar-Ortega had not shown that she suffered persecution on account of a statutorily protected basis, it need not address her argument that the IJ erred by finding that she failed to show that the Guatemalan government was unable or unwilling to control the perpetrators. The Board also concluded that because Salazar-Ortega did not satisfy the less demanding

[1]The IJ denied Salazar-Ortega's motion to reconsider on March 9, 2015, the same date on which the Board received her notice of appeal of the IJ's original decision. Because the notice of appeal was dated March 4, 2015, however, it did not indicate that Salazar-Ortega was also appealing the IJ's denial of her motion to reconsider. Although the Board did not specifically refer to the IJ's denial of the motion to reconsider, it considered and rejected the arguments she raised in that motion.

requirements to qualify for asylum, her claims for withholding of removal and relief under the CAT also failed.

We review the Board's decision for substantial evidence on the record as a whole, see Kanagu v. Holder, 781 F.3d 912, 916 (8th Cir. 2015), and will not disturb its findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); see INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1, 483-84 (1992). We review questions of law *de novo*, but give substantial deference to the Board's reasonable interpretation of the statutes and regulations that it administers. See Matul-Hernandez v. Holder, 685 F.3d 707, 712 (8th Cir. 2012). When the Board adopts the reasoning of the IJ, we consider the two decisions together. Kanagu, 781 F.3d at 916.

Substantial evidence on the record as a whole supports the Board's denial of Salazar-Ortega's claims for relief. No reasonable adjudicator would be compelled to disagree with the Board's finding that the persecution Salazar Ortega suffered was on account of her persecutors' criminal motive to extort money and their perception that she had the means to pay, rather than her political opinion or her membership in any of the particular social groups she proposed. As set forth above, Salazar-Ortega repeatedly testified that the two men had threatened, harassed, and attacked her because they wanted money and believed that she had it. Although Salazar-Ortega urges a different interpretation of the record, there is no indication that the Board or the IJ ignored or mischaracterized the evidence. See Quinteros v. Holder, 707 F.3d 1006, 1011 (8th Cir. 2013).

The fact that the two men attacked and attempted to rape Salazar-Ortega, although appalling, does not alone establish that such persecution was on account of a protected ground. "To reverse the finding that the alleged persecution was not based on a protected ground, it is necessary that the record *compel* the finding that a protected ground motivated the [perpetrators'] actions." Kanagu, 781 F.3d at 918

-5-

(quoting Gomez v. Gonzales, 425 F.3d 543, 545 (8th Cir. 2005)). The record in this case does not compel reversal of the finding that Salazar-Ortega was not persecuted on account of her political opinion or her membership in any of the particular social groups she proposed. To the extent the two men referred to Salazar-Ortega's employment as a sales representative, it is evident that those references were intended to put Salazar-Ortega on notice that the men were aware of her potential sources of income and to further intimidate her into paying them money. Likewise, to the extent that the men commented on a woman being dependent on a man, used demeaning language in one threat, or briefly remarked on Salazar-Ortega's separation from her husband, the record does not compel a reversal of the Board's finding that these isolated incidents were insufficient to establish that the two men had any motive beyond criminal extortion of money.

Salazar-Ortega argues that the Board erred by declining to determine whether her proposed particular social group of "single Guatemalan women who are working professionals" was cognizable. We disagree. The Board declined to reach this issue because it agreed with the IJ that, even if such a group were cognizable, Salazar-Ortega failed to demonstrate that she had been or would be persecuted on account of her membership in that group. See Aguinada-Lopez v. Lynch, No. 15-1095, 2016 WL 3176422, at *2 (8th Cir. June 7, 2016) (assuming that proposed particular social group was cognizable but affirming denial of relief because applicant failed to establish a nexus between that group and the persecution).

Salazar-Ortega contends that the Board failed to specifically discuss whether her political opinion or her membership in one of her proposed particular social groups was "at least one central reason" for the persecution she suffered. See 8 U.S.C. § 1158(b)(1)(B)(i); Matter of C-T-L-, 25 I. & N. Dec. 341, 344-46 (BIA Sept. 14, 2010) (noting that after enactment of the REAL ID Act of 2005, the "at least one central reason" standard applies in mixed-motive asylum cases). It is true that the "at least one central reason" standard applies in so-called "mixed-motive" cases, but the

Board found that Salazar-Ortega had presented insufficient evidence to establish that her political opinion or her membership in any proposed particular social group were even secondary motives of the two men, much less that either protected ground was "at least one central reason" for the alleged persecution. While a motive of extortion does not "preclude a finding of additional motives that may concern a protected ground," Marroquin-Ochoma v. Holder, 574 F.3d 574, 577 (8th Cir. 2009), Salazar-Ortega has failed to establish that the persecution she suffered was in any way on account of a protected ground.

Salazar-Ortega argues that the Board improperly substituted a different particular social group for the group of "single Guatemalan women who are working professionals" that she actually proposed, and she cites Crespin-Valladares v. Holder, 632 F.3d 117 (4th Cir. 2011), in support of her claim that this error requires that we remand the case. Unlike the circumstances in Crespin-Valladares, however, the Board acknowledged Salazar-Ortega's proposed particular social group, but declined to specifically determine whether the group was cognizable because, even assuming that it was, Salazar-Ortega failed to establish that she was persecuted on account of her membership in that group. Likewise, the IJ acknowledged Salazar-Ortega's proposed particular social group of "Guatemalan women who lack a male protective figure" and concluded that she had not established that the persecution she suffered was in any way related to her membership in that group. Neither the IJ nor the Board misstated, overlooked, or otherwise failed to consider the proposed particular social groups alleged by Salazar-Ortega. Rather, the IJ and Board each concluded that, even assuming the cognizability of Salazar-Ortega's various proposed particular social groups, she had not established that her membership in the relevant group was a reason for the persecution she suffered.

After considering the record as a whole, we conclude that no reasonable adjudicator would be compelled to reject the IJ's and the Board's conclusion that the

two men targeted Salazar-Ortega because they intended to extort money from her and they perceived that she was wealthy.

Because Salazar-Ortega failed to carry the relatively lower burden of proof on her asylum claim, and because her other claims for relief are based upon the same arguments, her claims for withholding of removal and relief under the CAT also fail. See Makatengkeng v. Gonzales, 495 F.3d 876, 885 (8th Cir. 2007).

The petition for review is denied.

_____