NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0366n.06

No. 20-3582

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 26, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LESLY PALMA-ULLOA; FRANKLIN REYNALDO VARELA-PALMA; C.S.V.P., | ) ) ) | |
|     Petitioners, | ) ) | ON PETITION FOR REVIEW |
| v. | ) ) | FROM THE UNITED STATES BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) ) | APPEALS |
|     Respondent. | ) ) | |

BEFORE: ROGERS, WHITE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Lesly Palma-Ulloa and her two children fled Honduras for the United States in fear of her partner's domestic abuse. In the asylum and withholding-of-removal statutes, however, Congress decided that immigrants may not obtain relief based solely on a risk of harm. They must also show that the alleged harm will arise because of certain protected traits, such as their race, religion, or, as relevant here, "membership in a particular social group." The Board of Immigration Appeals denied relief to Palma-Ulloa and her children on the ground that their proposed "particular social groups" were not cognizable. Yet the Board relied on two Attorney General opinions that have since been vacated. We thus remand for further proceedings.

Palma-Ulloa was born and raised in Honduras. She has six children. While employed at a hotel in 2008, she met and began a relationship with the father of her two youngest children, Henry Avilez Almendarez.

Palma-Ulloa has since suffered years of abuse from Avilez Almendarez. Palma-Ulloa testified that the abuse started after she became pregnant with the couple's first child. Avilez Almendarez did not want the child and so regularly hit Palma-Ulloa in the stomach. Palma-Ulloa moved in with her parents. After she gave birth, Avilez Almendarez promised to change. Palma-Ulloa agreed to return to him. His abuse soon resumed. According to Palma-Ulloa, an often-intoxicated Avilez Almendarez would regularly beat and rape her. She left him again about eight months after she gave birth to their second child. She stayed with her sister for three months but returned to Avilez Almendarez because she could not support herself and her children. His abuse continued.

Palma-Ulloa fled to the United States in 2013. Immigration authorities removed her to Honduras within the month. She lived with her parents on her return, but Avilez Almendarez again convinced them that she would be safe with him. When his abuse continued unabated, she fled to the United States a second time in May 2014. This time, she came with her two oldest children, Franklin and C.S.V.P.

Immigration authorities apprehended Palma-Ulloa and her children at the border. The government initiated immigration proceedings. Because Palma-Ulloa had been removed under a prior order of removal, it found her ineligible for any relief under the immigration laws other than withholding of removal. *See* 8 U.S.C. § 1231(a)(5), (b)(3)(A). The government placed her in withholding-only proceedings and her two children in regular removal proceedings. Palma-Ulloa and her children sought withholding of removal because of Avilez Almendarez's abuse. The children also sought asylum.

An immigration judge held that the family was ineligible for relief under the withholding-of-removal and asylum statutes. These statutes allow the Attorney General to grant immigrants

2

relief from removal if they will suffer sufficient harm in their home countries due to their race, religion, nationality, political opinion, or "membership in a particular social group." *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(A), 1231(b)(3)(A). Palma-Ulloa and her children asserted that they were members of three "particular social groups." Palma-Ulloa alleged one social group: "Honduran women unable to leave a domestic relationship." The immigration judge accepted this "particular social group" as valid based on *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (B.I.A. 2014). But the judge found that Palma-Ulloa was not a member of this group because she had been able to leave Avilez Almendarez. Palma-Ulloa's children alleged two other social groups: "Honduran children unable to leave a familial relationship" and their "immediate family." The immigration judge found that neither category qualified as a valid "particular social group."

The Board of Immigration Appeals upheld the denial of relief. Unlike the immigration judge, the Board concluded that "Honduran women unable to leave a domestic relationship" did not qualify as a valid social group. It explained that the Attorney General had since overruled the *A-R-C-G-* opinion on which the immigration judge had relied. *See Matter of A-B-*, 27 I. & N. Dec. 316, 333–40 (A.G. 2018). In a separate decision, the Board agreed with the immigration judge that the children's two proposed social groups did not qualify. When rejecting the children's claims, the Board again relied on a since-issued Attorney General opinion. *See Matter of L-E-A-*, 27 I. & N. Dec. 581, 594 (A.G. 2019).

Palma-Ulloa and her children petitioned this court for review. Two relevant developments have occurred while this petition remained pending. First, the Attorney General in a new administration issued an opinion that vacated the *A-B-* opinion on which the Board had relied to deny relief to Palma-Ulloa. *See Matter of A-B-*, 28 I. & N. Dec. 307, 308–09 (A.G. 2021). The Attorney General directed the Board and immigration judges to follow pre-*A-B-* precedent,

3

including the *A-R-C-G-* opinion that the immigration judge had cited in this case. *See id.* at 307. Second, on the same day, the Attorney General issued a separate opinion that vacated the *L-E-A-* opinion on which the Board had relied to deny relief to Palma-Ulloa's children. *See Matter of L-E-A-*, 28 I. & N. Dec. 304, 305–06 (A.G. 2021). The Attorney General directed the Board and immigration judges not to follow *L-E-A-* when adjudicating future cases. *Id.* at 304.

What should be done with this petition in light of these intervening legal developments? As we did in a similar case, we opt to remand to the Board so that it may reconsider the claims of Palma-Ulloa and her children without reliance on the now-vacated opinions. *See Corea v. Garland*, __ F. App'x __, 2021 WL 2774260, at *4 (6th Cir. July 2, 2021). Courts generally should permit the Board to address issues in the first instance. *See Gonzales v. Thomas*, 547 U.S. 183, 186–87 (2006) (per curiam); *INS v. Orlando Ventura*, 537 U.S. 12, 16–18 (2002) (per curiam). So courts have generally remanded for the Board to consider a new opinion that came out after an immigrant sought judicial review if that opinion could affect the Board's reasoning in the case at hand. *See, e.g.*, *Corea*, 2021 WL 2774260, at *4; *Caldera-Herrera v. Lynch*, 631 F. App'x 573, 576 (10th Cir. 2015); *Monterroso v. Att'y Gen.*, 476 F. App'x 973, 975–77 (3d Cir. 2012) (per curiam); *Naranjo-Barrajas v. Holder*, 356 F. App'x 923, 923–24 (9th Cir. 2009) (mem.); *Herrera v. Holder*, 340 F. App'x 21, 23 (2d Cir. 2009) (order); *cf. Paiz-Morales v. Lynch*, 795 F.3d 238, 243 (1st Cir. 2015); *Villalobos-Ramirez v. Lynch*, 608 F. App'x 261, 261–62 (5th Cir. 2015) (per curiam); *Kanagu v. Holder*, 781 F.3d 912, 919 (8th Cir. 2015). Given the Board's reliance on the now-vacated opinions, we find this course proper here.

We grant the petition for review, vacate the Board's decisions, and remand for further proceedings.